# CASES ARGUED AND DECIDED

—— IN THE ——

# SUPREME COURT OF MISSISSIPPI,

—— AT THE ——

## OCTOBER TERM, 1901.

JOHN B. HALSEY ET AL. *v.* JAMES J. GEE ET AL.

1. WILLS. *Contingent cross remainders. Ulterior limitation.*

    Where a will devised land to the testator's two grandsons, and provided that if either of them should die without issue it should go to the survivor, and if both should die without issue surviving, it should revert to the testator's son and daughter, the grandsons were tenants in common with cross remainders over, contingent upon the death of either without issue, with an ulterior limitation, if both should die without issue; and the joint conveyance of the grandsons vested in their vendee the fee, subject to be divested in favor of the ulterior limitees if both grandsons should die without issue.

2. SAME.

    In such case the vendee of the grandsons, upon the death of one of them leaving issue him surviving, became the owner of the lands in fee simple.

FROM the chancery court of, first district, Carroll county.

HON. A. MC. KIMBROUGH, Chancellor.

Halsey, and others, appellants, were complainants in the court below; Gee and others, appellees, were defendants there. The object of the suit was to confirm the complainant's title to

79 Miss.—13

the lands in controversy, known as the "Big Sand Place," and to vacate and annul the deeds under which defendants claimed the plantation as clouds upon complainant's title. The facts were as follows: The late Greenwood Leflore (in whose honor the city of Greenwood and the county of Leflore were named) died in 1865, leaving a last will and testament, the fifth item of which, the only part material in this controversy, was in these words:

"I give and devise to my two grandsons, Greenwood L. Halsey and John B. Halsey, the tract of land known as the 'Big Sand Place,' and in the event that either of my said grandsons should die without issue, then it is my will, and I hereby direct, that the land herein devised to him shall go to the surviving grandson, and in the event that both of them die without issue surviving, then it is my will that the land herein devised and bequeathed to them, together with all the bequests hereinafter made to them, revert to my son, John, and my daughter, Rebecca Harris, equally to be divided between them."

John B. Halsey, devisee, died in July 1900, leaving four children, now living, who are the appellants in this cause. Greenwood L. Halsey, devisee, died in October, 1900, without children, or descendants of children.

John B. Halsey and Greenwood L. Halsey, the first donees of the will, conveyed the land devised to them by the fifth clause of the will, the "Big Sand Place," by way of mortgage, to one Roach, as a trustee, to secure a debt to James J. Gee, who, said Gee and Roach, are the appellees in this cause.

*S. R. Coleman, Frank Johnston* and *McWillie & Thompson,* for appellant.

The precise question for consideration, and the one upon which the case exclusively depends, is in respect to the vesting of the estates in remainder in the children of John B. Halsey.

Assuming that this is a case of contingent cross remainders, it is impossible that the two first donees took estates in fee simple.

"Tenant in fee simple (or, as he is frequently styled, tenant in fee) is he that hath lands, tenements, or hereditaments, to hold to him and his heirs forever generally, absolutely, and simply. This is property in the highest degree, and the owner thereof hath *absolutum et directum dominum*, and is, therefore, said to be seized thereof absolutely in *dominico suo* in his own demesne." 3 Blackstone's Com., 104; 1 Bouvier's Law Dic., 578; 2 Blackstone's Com., 164.

This being a case of contingent cross remainders, it unquestionably follows that the first donee did not take estates in fee simple under the will.

We now invite the attention of the court to the inquiry in respect to the direct remainder as well as the cross remainder that went to the children of John B. Halsey upon his death. The estate of Greenwood L. Halsey unquestionably terminated at his death without issue. And the death of John B. Halsey with issue living undoubtedly was the contingency which defeated the ulterior limitation over to John D. Leflore and Rebecca Harris. The death of John B. Halsey, with issue surviving at his death, constituted the contingency which defeated the alternative estate limited over, and at the same time vested these estates in remainder in the children of John B. Halsey at his death.

The devise is one-half to John B. Halsey, with remainder over to Greenwood L. Halsey, in the event that John B. Halsey died without issue surviving him; and the devise was also one-half to Greenwood L. Halsey, with remainder over to John B. Halsey, if Greenwood L. Halsey died without issue surviving him.

It is the common case of contingent cross remainders and implied direct remainders, and it is to be most carefully observed that it is not the case of the estate, as known to the

ancient common law before the statute *de donis constitutional-ibus,* of a determinable or conditional fee which became a fee simple upon the birth of issue of the first taker.

John B. Halsey had a contingent cross remainder in the half devised to Greenwood L. Halsey. The right to this contingent estate in remainder was a vested one in John B. Halsey, subject to the ulterior limitation. The right to the estate was vested, although the estate was contingent. Greenwood L. Halsey's entire estate and interest in the land terminated at his death, and this half went, by the cross remainder, to the appellants.

It is evident that, if John B. Halsey had died without issue living at the time of his death, his estate would have terminated at his death, and his half would have gone to Greenwood L. Halsey, surviving, for life, and subject to the ulterior limitation. In no possible event could the estate of John B. Halsey extend beyond his life. If he died without issue, it went to Greenwood L. Halsey, if he survived; or to his issue in fee simple, if he died leaving issue. If both donees died without issue, then the estates of the two first donees terminated, and the ulterior or substituted estate in fee simple took effect. If either died with issue living at the time of his death, then such issue took the share of their father, by implication, under the will.

The words " dying without issue," or "without heirs of the body," or like expressions, according to the elementary rule, create an estate, by implication, in such issues. 2 Preston on Estates, 504; Fearne on Contingent Remainders, 477; 2 Jarman on Wills, 329.

It was said by the court, in the leading case of *Nottingham* v. *Jennings,* 1 Lord Raymond, 568, that the use of these words shows the intention of the testator to create an estate in the issue of the first donee. This rule was also announced in *Holmes* v. *Manynell,* 2 Showers, 136, another leading English case, involving a devise to two donees with cross remainders over.

Applying this rule to the present case, a correct analysis of the will is as follows:

1. John Halsey took a direct devise of one-half of the property with remainder over to his issue by implication, and in default of issue, then to Greenwood Halsey, surviving subject to the alternate devise.

2. Greenwood Halsey took also a direct devise of one-half, with remainder over to his issue, by implication, and in default of issue, then to John Halsey surviving.

3. John Halsey had a contingent cross remainder on Greenwood Halsey's death without issue.

4. John Halsey took this cross remainder subject to his dying without issue, in which event this half of the property went to the ulterior devisees. But if John Halsey died leaving issue, this event defeated the ulterior, or alternative, limitation over, and such issue took this half of the property in remainder by implication.

5. Greenwood L. Halsey had a contingent cross remainder in John Halsey's half of the property upon the death of the latter without issue, subject to the ulterior devise.

6. But, Greenwood L. Halsey was to take John B. Halsey's half in remainder, subject to the event of his own death without issue, in which event this half was to go to the ulterior, or substituted, devisees. But, if Greenwood L. Halsey died, leaving issue, then the ulterior or substituted devise failed, and his issue took this half in remainder by implication.

We will apply this construction to the events as they occurred. Upon the death of John B. Halsey, the half devised directly to him went to his children in remainder, by necessary implication. And as the cross remainder, at Greenwood Halsey's death, was to John B. Halsey, with the ulterior or alternative limitation over in default of issue, then his issue took the cross remainder, by necessary implication, thus defeating the ulterior or substituted limitation over. If John Halsey had

survived Greenwood L. Halsey, he would have taken that half for his life, and at his death it would have gone, by necessary implication, to his children. In default of issue, then over to the ulterior devisees.

It is clear that the first two donees did not take estates in fee simple, and it is equally clear that they did not take conditional or qualified fees. In any possible event, their estates in the land terminated at their deaths, and were only estates for life, and the property went, in the alternative, to their issue or to the ulterior devisees. It is also clear that the issue of the two first donees were to take both the direct devisees and the cross remainders, by necessary implication.

Freed from all artificial technicalities, the testator did not intend to create estates of different qualities in the children of the two first donees, or in the alternative or substituted devisees. We place this interpretation upon the precise terms used and upon the entire context of the fifth clause of the will, looking to the intention of the testator. As a matter of testamentary intention, the testator intended that the fee simple to the property should vest, in any event, at the death of both of the first donees, and that it vested in the children of John Halsey at his death.

There can be no controversy about the proposition that the estates devised to the ulterior or substituted devisees were in fee simple. In the words of the will, the property, upon the failure of issue of both of the first donees was to go, "to my son John and my daughter Rebecca Harris." There being no words limiting a less estate, these words, under the statute, either in a will or a deed, created an estate in fee simple. Code of 1857, 306, Art. 2.

A slight indication of intention in the context of a will is sufficient to induce the construction that the intention of the testator was to give the first donee a life estate with the remainder to his children. 2 Jarman on Wills, 244.

*Marcus Askew* and *S. M. Roane*, for appellees.

It has been held that a gift to issue is not implied from a gift over upon a definite failure of issue. 1 Jarman on Wills (5th Ed.), 561 563; 29 Am. & Eng. Enc. of L., 386, 387; 11 Ib. 918, but a contrary construction has been adopted in several instances in some of the states. *Bentley* v. *Kaufman*, 12 Phil. (Pa.) 435. At present time the rule has been settled by statute in most states. 11 Am. &. Eng. Enc. L., 918; In Miss. code 1857, p. 307, sec. 8; code 1880, sec. 1203; code 1892, sec. 2448.

If this devise had been to John B. Halsey and Greenwood L. Halsey for life, with remainder to their issue, or the issue of either, and in the event both die without issue then surviving, the land to revert to John D. Leflore and Rebecca Harris, this would have given complainants a standing in court under our state, abolishing the rule in Shelley's case, code 1892, § 2446, and the complainants here would have taken the fee as purchasers, by virtue of the remainder so limited to them; but in the will here for construction, these defendants are mentioned only as a contingency and not as a devise.

Under the rule in Shelley's case a devise to A. for life and after death to his issue, vests in A. an estate tail. 11 Am. & Eng. Enc. L., 886; 6 *Ib.*, 878; and under our statute, abolishing the rule, A. would take a life estate, and his issue would take as purchaser by virtue of the remainder so limited to them. *Powell* v. *Brandon*, 24 Miss., 343; *Kirby* v. *Calhoun*, 8 Smed. & M., 462. The chief end to be attained, in arriving at a just and equitable construction of a will, is to ascertain the intention of the testator, as expressed in the words of the will. All rules of construction should bend to this, the prime object of the investigation. With this object in view, evidence would be admissible of the circumstances and environments with which the testator was surrounded at the time of making the will. *Losson* v. *Dwyer*, 2 Am. & Eng. Dec. in Eq., 682;

*Watson* v. *Blackwood*, 50 Miss., 15; *Tucker* v. *Stites*, 39 Miss., 196; *Vannerson* v. *Culbertson*, 10 Smed. & M., 150.

Upon the face of the fifth clause of the will a plain case is presented of an estate in fee in John B. and Greenwood L. Halsey, determinable on both dying without issue, and upon that contingency of an executory devise over to John D. Leflore and Rebecca Harris.

Complainants, as the children of John B. Halsey, are nowhere mentioned as legatees or devisees in the will of Greenwood Leflore, and the fact is, that all the title they have even acquired to the land in controversy is by inheritance and not by devise; and, taking the estate of their father by inheritance from him and not by devise from Greenwood Leflore, they take it with the burdens their father has imposed upon it.

Argued orally by *S. R. Coleman*, for appellant, and *Marcus Askew*, for appellee.

TERRAL, J., delivered the opinion of the court.

The fifth clause of the will of Greenwood Leflore vested the fee simple to the Big Sand place in the two devisees as tenants in common, with cross remainders over, contingent on the death of either without issue, and with an ulterior limitation if both should die without issue. Their joint conveyance vested in their grantee the fee as held by them—that is, subject to be divested and vested in the ulterior limitees if both devisees should die without issue. The death of John B., one of the devisees, leaving issue, destroyed the ulterior limitation by making impossible the contingency on which it was to take effect, with the result that the fee was absolute and unconditional, instead of contingent. The complainants took by descent, and subject to the incumbrance of their ancestors; wherefore they are not entitled to have the deed of trust canceled. Jarman on Wills, secs. 6, 7(c.) 17, p. 519 *et seq.; Nellis* v. *Nellis*, 99 N. Y., 505 (3 N. E., 59); *Buel* v. *Southwick*, 70

N. Y., 581; Code 1892, §§ 2435, 2436; Jarman on Wills, sec. 3 (*c.*) 29, p. 946 *et seq.; Busby* v. *Rhodes*, 58 Miss., 237; *Carr* v. *Porter*, 1 McCord Eq., 60.

*Decree affirmed.*